### John Mansfield, Appellee, v. Alex M. Shapiro, Appellant.

### Gen. No. 28,896.

INDEPENDENT CONTRACTORS—*when driver of defendant's automobile shown by evidence to have been independent contractor and not servant.* Where defendant, the owner of an automobile had an arrangement with a young man attending school, as did a number of other car owners, whereby the young man would take care of defendant's car, generally taking it to his own garage, where he would tune it up, keep it cleaned, greased and oiled and see that the tires were inflated and water kept in the batteries, etc., for which he was paid $5 per month by defendant and each of the other car owners for whom he performed similar services, such young man was an independent contractor or a bailee for hire, not a servant of defendant, and the latter was not liable for his negligence in colliding with plaintiff's car while returning defendant's car to defendant's garage after performing the usual services upon it.

Appeal by defendant from the Municipal Court of Chicago; the Hon. FRANK E. REED, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1923. Reversed. Opinion filed October 30, 1924.

MILLER, GORHAM, WALES & NOXON, for appellant.

IVOR JEFFREYS, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant Shapiro seeks to reverse a judgment for $425, recovered by the plaintiff

in the municipal court of Chicago, in an action brought to recover damages suffered by the plaintiff's automobile, in a collision with the defendant's automobile, when the latter car was being driven by one Goldberg. The only point urged by the defendant in support of this appeal is that the evidence shows, as a matter of law, that Goldberg was not the defendant's servant, but rather that he was an independent contractor, and therefore the defendant was not liable for the damage done to the plaintiff's car, even assuming that it was occasioned by the negligence of Goldberg.

The facts relating to the point thus contended for were as follows:

Goldberg was a young man attending high school. He had an automobile of his own which he kept in a small private garage, a portion of which he rented. In an effort to earn some money, he spent his Saturdays and Sundays taking care of the cars of other people. The testimony shows that he made arrangements with fourteen or fifteen different people,—mostly physicians, one of whom was the defendant, whereby he kept their cars in good condition. For this service, each of the parties thus employing Goldberg, including the defendant, paid him the sum of $5 a month. It was the habit of the defendant, as well as the others, when he found that he was not going to have occasion to use his car for several hours, and it needed attention, to call up Goldberg and tell him that it would be an opportune time for him to come and get the car and go over it, whereupon Goldberg would come over to the point where the car was, which would usually be the doctor's office or his home, and get the car and take it around to his own garage, where he would give it the attention it required. Goldberg had one of his school mates as a helper.

In connection with this question, Goldberg testified that under his arrangement with the defendant he was to maintain the car in fair running shape, as far as

light repairs were concerned, and necessary mainte-
nance, like greasing the car, cleaning the spark plugs,
putting air in the tires or water in the batteries; that
he did this work for the defendant, and the others
with whom he had similar arrangements, twice a
month; that he never acted as chauffeur for any of
these parties. He further testified that for the $5 a
month which he received he supplied whatever grease
was required, but that whenever the cars needed oil,
he would get it at a nearby oil station and render a
bill for whatever it cost; that "the extent of my busi-
ness on the car was keeping it tuned up and I would
take the car around to have air put in the tires and
things of that sort"; that if he had many cars to take
care of on a given day, he would bring them around
to his place, "one at a time, usually two or three.
Bring in two or three at a time, and sometimes went
to the garage that the doctor kept his car and look
at it right there. Just about suit my own convenience
about that. Usually Doctor Shapiro would mention
different things to be done to the car that he wanted
me to do and I would do them in accord with his sug-
gestion," such as cleaning the spark plugs and things
of that sort; that he "would go around to the place
and get his car, and then fix it up and run it to see that
it run all right and then return it to him wherever
the doctor told me to return it." He further testified
that on the morning in question he went to the garage
early in the morning; that the defendant was not there
and he had not told the witness what to do that day;
that he had not seen the defendant since he worked
on the car the last time, about two weeks previous;
that he did not receive any particular instructions that
morning, but did the work which was necessary to be
done on the car, greasing it and oiling it and taking it
to the battery station and putting water in the bat-
tery; and then over to a tire shop where he put air
in the tires, after which he returned to his own garage

and then left there intending to drive the car back to the doctor's office; and that the collision with the plaintiff's car took place on the way to the doctor's office.

The defendant testified that he had known Goldberg five years and that he had been doing this work of caring for his car during the past three years; that this involved the greasing of the car, the oiling, and occasionally Goldberg would change the spark plugs or a tire or put air in the tires and so on; that for this work he paid Goldberg $5 a month and Goldberg would go over the car about twice a month. The doctor testified that under his arrangement with Goldberg he had the right to dispense with his services at any time. On cross-examination he testified that occasionally Goldberg drove the car for him, and that whenever that was done, an arrangement would be made covering each time he called upon him for such services. On redirect examination he testified that he paid no attention to what Goldberg did; that Goldberg would come and get the car and take it over to his own place and the defendant paid no attention after he left; that all he wanted was to have his car greased and the other matters, to which reference has been made, taken care of. He testified that he carried a can of grease under the seat of the car and he presumed Goldberg was using that when he greased the car.

In the briefs filed in this court, both parties have treated the issue presented as one involving the question of whether Goldberg was the defendant's servant or whether he must be considered as an independent contractor, as distinguished from a servant. Considering the issue on that basis, one of the main tests in determining whether, in a given case, a person is an employee or an independent contractor is to be found in the question of the right of the defendant to control the manner in which such person is to do his work. *Bristol & Gale Co. v. Industrial Commission,* 292 Ill.

16; *Bosco v. Boston Store of Chicago,* 229 Ill. App. 564. But this does not mean that the relation of master and servant exists in every case where there is to be found any right of control in the one claimed to be the master, as to the time when given work may be done or as to how it shall be done. In other words, the rule referred to may not be laid down as so general as to cover every case where there is found any right of control over the manner of doing the work or the time when it shall be done, but each case must be determined in the light of the facts presented.

In the case at bar it would seem clear that the defendant might direct Goldberg to come and get his car, when the defendant found it would suit his convenience, but that fact would not make Goldberg his servant, but would be entirely consistent with Goldberg being an independent contractor.

Counsel contends, in the brief filed in this court, that under the evidence in the record the defendant had the right to control the manner in which Goldberg was to do the work on his car. It is clear from the evidence, in our opinion, that the defendant, as a matter of fact, did not control the manner in which Goldberg did the work contracted for. As the doctor put it, while testifying, he paid no attention after Goldberg came and got the car. All he was interested in was in having his car greased and oiled, with enough water in the batteries and air in the tires, and so on, and he paid no attention to where Goldberg attended to these matters or how he did it. But, as counsel points out, the test referred to is not to be found in the question of whether or not the alleged master did control the manner of doing the work, but the test is whether he had the right to control the manner in which the work was to be done. No doubt this test is frequently very helpful in determining the question of whether a given individual is a servant or an independent contractor. But again we are of the opinion

that this may not be laid down as a universal test. There may be many situations where one might arrange to have certain work done by another under such circumstances as would unquestionably make that other an independent contractor, and yet the one negotiating for the work to be done might have the right to, at least in some measure, control the time at which or the manner in which the work was to be done. Take the case at bar for example. It might well be, under the evidence in the record, that the defendant might have the right to direct Goldberg to use some specific kind of grease, or to use some designated can of grease, or some designated type of oil, or to supply the batteries with water from a specified battery station, but that would not necessarily make Goldberg his servant in driving the car back to the defendant's office from Goldberg's garage after all the items to be attended to had been finished up. In our opinion, under the evidence in the record, the defendant did not have control of the manner in which Goldberg did his work to such an extent as to establish the relation of master and servant, nor does the evidence show that he retained such a right to interfere in the manner of doing the work, as to establish such a relation.

Another contention made by counsel for the plaintiff is to the effect that the evidence shows that the defendant had the right to discharge Goldberg at any time. There are many situations presenting a problem as to whether one whose negligence has caused an injury to the plaintiff was the servant of the defendant or of someone else who was an independent contractor, and in such situations it is helpful to consider the question of whether the defendant retained the right to discharge the person whose negligence caused the injury. But again, there are many situations to which such a test is not applicable nor accurate. The defendant in the case at bar did have the

right, apparently, to discharge Goldberg at any time, but that fact would have been equally consistent with the relation of independent contractor. If the defendant had entered into such a relationship with Goldberg as made it plainly a case of independent contractor, receiving monthly payments, the bare fact that the defendant would have the right to terminate that relationship at any time would not change the situation so as to make Goldberg the defendant's servant. Nor is the fact that payment was to be made by the month helpful in determining this question, either one way or the other.

If Goldberg had been the proprietor of a public garage offering service to any who desired it, in the way of keeping their automobiles in shape, washing them, greasing them, oiling them and so on, periodically, and if, in rendering such service, it was the custom to go himself or send some employee for the cars on which he rendered such service, bringing them to his garage, rendering the services there and afterward returning them to the premises of the owners, receiving for his service a stipulated amount per month, and the defendant had been one of these customers and Goldberg had run into the plaintiff's automobile and damaged it, under the circumstances disclosed by the evidence in this case, while returning the defendant's car from his garage to the defendant's office, we are of the opinion that there could be no question of the fact that Goldberg should be considered an independent contractor. The only difference between that situation and the one presented by the facts in this case is that instead of running a public garage business, Goldberg was conducting a very small modest business in a part of a rented garage in which he kept his tools and also a car of his own.

In our opinion, one of the important elements in this case is to be found in the fact that Goldberg was earning some money, not merely by taking care of the doc-

tor's car, but by engaging in the business of taking care of the cars of anybody who was willing to engage him for that purpose at a stipulated amount per month, and in conducting that business he had entered into an arrangement with a number of individuals, including the defendant. This business which he was conducting was entirely independent of the defendant. For the most part, the work he did on the cars of his customers was done at his own garage and at a time when the cars of his customers were within his complete control. In conducting this business he employed a helper to assist him in rendering the service he contracted for to his various customers, including the defendant.

Under all these circumstances we are of the opinion that the evidence fails to establish that the relation of master and servant existed between the defendant and Goldberg, but that the relation which Goldberg occupied was rather that of an independent contractor running an independent business, in which he rendered specified services to the public of which defendant was one and that, therefore, the defendant may not be considered liable for the injuries occasioned to the plaintiff's automobile, assuming that such injuries were caused by Goldberg's negligence.

While, as distinguished from a servant, Goldberg may be considered an independent contractor, and the evidence shows he conducted a business which was entirely independent of the defendant, in which he contracted to render certain services to the defendant and others, we are of the opinion that his status was, in reality, that of a bailee for hire. In *Russell v. Koehler,* 66 Ill. 459, one taking a carriage to repair for pay was considered a bailee for hire. In *Standard Brewery v. Bemis & Curtis Malting Co.,* 171 Ill. 602, the Supreme Court said: "A bailment for hire exists where the bailee is hired by the bailor to bestow labor or perform service upon the thing bailed." In *Ford*

*Motor Co. v. Osburn,* 140 Ill. App. 633, this court held that upon receiving an automobile for repairs to be made for the mutual benefit of the owner and the repairer, the latter becomes a bailee for hire. There would seem to be no distinction between making repairs upon the article in question and performing some other labor or service upon it, the possession of the article being turned over to the one who is to perform the services, he being engaged in the business of performing such services for any one wishing to contract for them.

Considering Goldberg as a bailee of the defendant's automobile for hire, the latter may not be held liable for damages suffered by another as the result of Goldberg's negligence. 5 Cyc. 212; 3 R. C. L. ¶ 69; 6 Corpus Juris ¶ 114, p. 1151, and cases there cited. It is there stated that a bailor is not liable to third parties for damages suffered by them and occasioned by the negligence of the bailee or his servants.

For the reasons stated the judgment of the municipal court is reversed.

*Judgment reversed.*

O'CONNOR, P. J., and TAYLOR, J., concur.